UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD ORCHARD,

     Plaintiff,

v.

CITY OF NOVI,

     Defendant.

_____/

Case No. 2:21-cv-10613

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART SUMMARY JUDGMENT MOTION [20]

Plaintiff Gerald Orchard sued his former employer, the City of Novi, under the Americans with Disabilities Act ("ADA"). ECF 1. Plaintiff alleged that his employer violated the ADA by discriminating against him based on his disability, by failing to accommodate his disability, and by retaliating against him for requesting an accommodation and filing a charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 4–9. Plaintiff also asserted similar claims under Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"). *Id.* at 9–14. The City moved for summary judgment on all claims. ECF 20. The Court held a hearing on the motion. For the following reasons, the Court will grant in part and deny in part the motion.

## BACKGROUND

Gerald Orchard worked for the City of Novi for twenty-five years. ECF 20-12, PgID 411. For his last fifteen years, he worked as a Sign Technician. ECF 22-2, PgID

1

492. In that role, he made, installed, and replaced traffic and street signs. *Id.* He also picked up optional overtime work like plowing snow, picking up roadkill, and helping with concrete pouring. *Id.* at 493–95. He "worked a lot of overtime"—about ninety percent of the department's overtime. *Id.* at 493, 516. But his regular work was spent mostly in the sign shop where he ordered supplies and made traffic signs or on the streets where he installed the signs. *Id.* at 493.

Creating a sign required one worker to design the image on a computer, have a machine cut the image into vinyl, and then transfer the vinyl cutout to an aluminum sign. ECF 22-2, PgID 492, 495–96. If Plaintiff ever needed help lifting something in the shop, he would ask coworkers, and help was provided. ECF 20-3, PgID 239; ECF 22-2, PgID 502.

Installing a sign involved two workers inside an aerial lift: one person to hold a pole and the other to operate a jackhammer. ECF 20-13, PgID 418; ECF 22-2, PgID 498, 500. The jackhammer weighed more than fifty pounds, but a pole only weighed a few pounds. ECF 20-10, PgID 372–73; ECF 22-2, PgID 500. After the jackhammer drove the pole into the ground, one worker held the aluminum sign that Plaintiff had made, while the other worker bolted the sign onto the pole. ECF 20-13, PgID 418; ECF 22-2, PgID 498, 500.[1]

Throughout his career, Plaintiff was almost always the worker that held the jackhammer. ECF 22-2, PgID 500. He did this by choice—his job never required him

---

[1] Plaintiff provided a video of workers installing a signpost. ECF 22-1, PgID 486 (filed in the traditional manner).

to specifically be the jackhammer operator. *Id.* at 500–01. One time that he did not operate the jackhammer, it fell on him and shattered his shoulder. *Id.* at 500. He needed three shoulder surgeries in eighteen months to repair his shoulder. ECF 20, PgID 203 n.3; ECF 22-2, PgID 506.

Yet during that time, he kept working as a Sign Technician and the City accommodated his recovery. ECF 22-2, PgID 501. For example, when his doctor restricted his lifting to ten pounds, he received help loading vinyl into the machine that made signs. *Id.* He also continued to install signs with another worker who operated the jackhammer while Plaintiff held the poles. *Id.*

But after his last surgery, Plaintiff's doctor suggested a permanent accommodation. *Id.* at 512. His doctor explained that Plaintiff needed a permanent work restriction to not lift more than twenty-five pounds with his right arm. *Id.*; ECF 22-7, PgID 671–72. When Plaintiff lifts more than twenty-five pounds with his right arm, he is in pain. ECF 20-8, PgID 355; ECF 22-2, PgID 514. Plaintiff's doctor believed that he could do all his job's essential tasks except lift and carry fifty or more pounds. ECF 22-7, PgID 672.

Over the next few months, Plaintiff underwent a functional capacity exam to determine his limitations. ECF 20-8. The exam recommended that Plaintiff could carry up to fifty pounds with his left arm, but he could only carry ten pounds with his right arm. *Id.* at 354. Plaintiff also underwent an independent medical evaluation. ECF 22-9. The evaluation agreed that Plaintiff could "return to work with[] the restrictions outlined in the functional capacity evaluation." *Id.* at 696. None of

Plaintiff's supervisors or the City's Human Resources Director recall that they ever reviewed these findings. ECF 20-3, PgID 250; ECF 20-4, PgID 297; ECF 20-13, PgID 429; ECF 22-11, PgID 728–29.

The Human Resources Director explained that the permanent restrictions ordered from Plaintiff's doctor were requests to accommodate. ECF 22-11, PgID 716. And the City denied the requests in a letter without explanation. ECF 22-14, PgID 782. The letter instead encouraged Plaintiff to apply for disability retirement. *Id.*

When Plaintiff reached out to the Human Resources Director about his work restrictions, she told him, "[Y]ou're not coming back with restrictions." ECF 22-2, PgID 506, 509. One supervisor echoed similar beliefs. ECF 20-3, PgID 247 ("If you have no restrictions, you are fully duty."), 249 ("[W]e needed employees to come back at full duty."). And the Director noted that "it's much easier to accommodate something on a temporary basis in the hopes that it will stop and not continue, as opposed to an accommodation that will go on forever." ECF 22-11, PgID 720.

A representative from Plaintiff's union then challenged the denial and the Human Resources Director detailed what essential tasks Plaintiff could not do. ECF 22-14, PgID 783–85. Among the tasks were "utilizing a spade shovel," installing signs, "[l]ifting sign material rolls," "utilizing a post hammer," and "[r]etrieving large sign blanks." *Id.* at 783–84.

The representative later attended a meeting between Plaintiff and the Human Resources Director at which Plaintiff requested a permanent accommodation. ECF 22-2, PgID 506. *See generally* ECF 20-10.[2]

At the meeting, the Director asked Plaintiff if he applied for disability retirement. ECF 20-10, PgID 369. Plaintiff explained that he likely would not qualify for disability retirement given that he is not "disabled" under the plan's definition because his only medical restriction is lifting more than fifty pounds with his right arm. *Id.* at 370. The Director then pushed back and told Plaintiff that he "should probably apply sooner rather than later" for disability retirement. *Id.* The union representative confirmed whether the City would give Plaintiff his job back even though his doctor cleared him for work with some restrictions. *Id.* The Director confirmed, "[w]e're requiring that they're not permanent restrictions" and that the City has "never, in the history since [she has] been [t]here . . . had someone be on permanent restrictions." *Id.*[3]

Plaintiff then pleaded with the Director to make "reasonable accommodations" under the ADA. *Id.* at 371. The Director responded that the City has "made reasonable accommodations" since his injury. *Id.* The Director then explained that she and "everybody got together and decided that they just couldn't keep" accommodating Plaintiff. *Id.* at 372; *see also* ECF 22-11, PgID 718–20. Plaintiff then put it bluntly, "it's a hard pill to swallow when none of those guys really know my job

---

[2] The meeting was recorded and ECF 20-10 is a transcript of the meeting.
[3] In the Director's deposition, she did not recall making the statements to Plaintiff. ECF 22-11, PgID 713.

and know what happens in our job. And so for them to sit there and say there's no way we can meet those restrictions is . . . a pretty hard pill to swallow." ECF 20-10, PgID 372. And Plaintiff even explained that the *only* task he struggled with was lifting the fifty-pound jackhammer. *Id.* Plus, he suggested that installing signs is a "two-man job," and so he did not even need to operate the jackhammer. *Id.* Plaintiff also told the Director that the City set aside a budget to buy a new truck that would allow workers to use the jackhammer without anyone lifting it. *Id.* at 372–73. The Director said that she had no idea whether the City was buying the new truck. *Id.* at 373. Finally, toward the end of the meeting, the Director told Plaintiff, "[A]ssuming that you get your disability retirement and you get better to where you can do your job without restrictions, then you [can] come back." *Id.* at 376.

Before he was fired, Plaintiff filed a charge with the EEOC for the City denying him reasonable accommodations under the ADA. ECF 22-16 (charge); ECF 22-2, PgID 492 (firing). Since being fired, Plaintiff has had trouble finding another job. ECF 22-2, PgID 490–91. His health insurance is worse. *Id.* at 515. And his pension from the City was slashed. *Id.* at 516.

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the

moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

Courts address ADA and PWDCRA claims in the same inquiry. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) ("The PWDCRA 'substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim.'") (quotation omitted); *see also Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 472 (1999) ("[The Michigan Court of Appeals] and the Michigan Supreme Court have noted that the federal [ADA] and the PWDCRA share the same purpose and use similar definitions and analyses, and both courts have relied on the ADA in interpreting the PWDCRA."). Plaintiff agrees that his PWDCRA

7

claims hinge on the same reasoning as his ADA claims. ECF 22, PgID 470 n.1. The Court will therefore resolve the PWDCRA claims under the ADA's framework.

The ADA forbids discrimination against a qualified individual based on disability. 42 U.S.C. § 12112(a). "[N]ot making reasonable accommodations" is one form of discrimination that the ADA forbids. § 12112(b)(5)(A). Plaintiff can show discrimination through direct or indirect evidence. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018) (citation omitted). "[B]ecause the framework for analyzing [direct and indirect evidence] cases differs," it "is vital" that the Court and the parties note which test applies. *Id.* (quotation omitted).

The ADA also forbids retaliation "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Requests for accommodations are ADA protected acts. *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) (citations omitted). Like discrimination claims, Plaintiff can show retaliation through direct or indirect evidence. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). The Court will address Plaintiff's ADA claims in turn.

I.   <u>Discrimination Claim</u>

Only "qualified individuals" can sue for discrimination under the ADA. *McKnight v. Gen. Motors Corp.*, 550 F.3d 519, 522 (6th Cir. 2008) (quotation omitted). The ADA defines a "qualified individual" as "an individual who, with or without

reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

"ADA discrimination claims are analyzed under two different rubrics, depending on whether the plaintiff relies on 'direct' or 'indirect' evidence of discrimination." *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 297 (6th Cir. 2019) (citation omitted). Plaintiff asserted that his claim turns on direct evidence of discrimination. ECF 22, PgID 474.

For a prima facie ADA discrimination claim based on direct evidence, Plaintiff must show: "(1) that he is an individual with a disability, and (2) that he is otherwise qualified for his job despite the disability (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation." *Hostettler*, 895 F.3d at 852 (cleaned up). If Plaintiff satisfies the direct evidence framework, then the City must prove "that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007) (quotation omitted). The Court will now address each element.

A.    *Disability*

In 2008, Congress expanded the definition of "disability" in an amendment to the ADA. *Morrissey*, 946 F.3d at 299 (citing 42 U.S.C. § 12102(4)(A), (B)). It follows that cases decided before the 2008 amendments are not good law. *Id.*; *see also Hostettler*, 895 F.3d at 848–49.

The ADA now defines a disability as "a physical or mental impairment that *substantially limits* one or more major life activities[,] . . . a record of such an impairment[,] or . . . being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C) (emphasis added). Major life activities include "lifting." § 12102(2)(A). And Congress explained in the 2008 amendments that Courts must broadly construe "disability" and "substantially limits" "to the maximum extent permitted by" law. § 12102(4)(A), (B).

Under the ADA's regulations, courts must compare the person claiming a disability to "most people in the general population" to find whether the person suffers from a disability that substantially limits major life activities. *Hostettler*, 895 F.3d at 853 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "An impairment need not prevent, or significantly or severely restrict . . . a major life activity" to substantially limit it. 29 C.F.R. § 1630.2(j)(1)(ii). At bottom, qualifying as 'disabled' is "lenient." *Hostettler*, 895 F.3d at 854.

The City's summary judgment motion argued, based on pre-2008 cases, that Plaintiff's right-arm lifting restriction does not qualify him as disabled. ECF 20, PgID 209–11 (citations omitted). And in reply, the City did not point to case law that supported the argument. *See* ECF 23, PgID 819–21. In all, the City did not argue the 2008 amendment's impact on the disability analysis. And for that reason, the City has no right to summary judgment on the disability prong.

At minimum, Plaintiff has shown a genuine dispute about whether he is disabled. Plaintiff cannot lift more than twenty-five pounds on his right arm. ECF

20-8, PgID 355; ECF 22-2, PgID 512; ECF 22-7, PgID 672. And when Plaintiff does try to lift more than twenty-five pounds with his right arm, he is in pain. ECF 20-8, PgID 355; ECF 22-2, PgID 514. That is enough evidence to show that Plaintiff is disabled. *Morrissey*, 946 F.3d at 300 (noting that a plaintiff need only show the "impairment causes pain or fatigue that most people would not experience when performing that major life activity" under the regulations) (quotation omitted). After all, persons in the general population do not have pain when lifting twenty-five pounds with one arm. Plaintiff has therefore met the "lenient standard" to show a genuine dispute about whether he is disabled under the ADA. *Hostettler*, 895 F.3d at 854.

The 2008 amendments also "relaxed" the standard for an employee to show that an employer regarded him as disabled. *Harrison v. Soave Enters. L.L.C.*, 826 F. App'x 517, 525 (6th Cir. 2020). As a result, "an employee need only show that their employer believed they had a 'physical or mental impairment.'" *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 319 (6th Cir. 2019). An employer can then rebut that finding only "by pointing to objective evidence 'that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor.'" *Id.* (quoting 29 C.F.R. § 1630.15(f)).

Based on the liberalized standard, Plaintiff has shown a genuine dispute about whether the City "regarded" him as disabled. The Human Resources Director for the City tried to push Plaintiff to apply for disability retirement and even contacted the plan administrators to help him with the process. ECF 20-10, PgID 369; ECF 22-18.

11

The City countered that the Director told Plaintiff that he was not disabled. ECF 20, PgID 211. But Plaintiff explained to the Director that he was not 'disabled' based on the disability retirement plan's definition—not the ADA. ECF 20-10, PgID 370. Besides, even if Plaintiff did not believe he were disabled, that fact does not preclude the *Director* from believing Plaintiff had a "physical or mental impairment." *Babb*, 942 F.3d at 319. To be sure, it makes little sense why the Director would encourage Plaintiff to apply for disability retirement if she believed that Plaintiff lacked a physical impairment. In sum, a factfinder must resolve the issues about whether Plaintiff was disabled, or whether the City regarded him as disabled.

B.     *Otherwise Qualified*

Because Plaintiff has shown a genuine dispute about whether he is disabled or his employer regarded him as disabled, Plaintiff must also show a genuine dispute about whether he was otherwise qualified for the job despite the disability. *Hostettler*, 895 F.3d at 852. The parties disputed three issues. First, whether lifting and carrying fifty pounds or more was an essential job requirement. Second, if the task is essential, then whether Plaintiff could perform that task. And third, if Plaintiff could not perform the task, then whether Plaintiff could do it with a reasonable accommodation. The Court will address the arguments sequentially.

1.     *Alleged essential job requirement eliminated*

"Essential functions are 'the fundamental job duties of the employment position the individual with a disability holds.'" *Rorrer*, 743 F.3d at 1039 (quoting 29 C.F.R. § 1630.2(n)(1)). "A job function may be considered essential because (1) the

position exists to perform the function, (2) a limited number of employees are available that can perform it, or (3) it is highly specialized." *Id.* (citing 29 C.F.R. § 1630.2(n)(2)).

An essential job function looks at several nondispositive factors. *Id.* at 1039–40 (citations omitted). Those factors include:

> (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

A supervisor noted that lifting forty-five pounds was essential for Plaintiff to carry out tasks in the sign shop. ECF 20-13, PgID 428. And another supervisor noted that carrying signs and the jackhammer that may weigh between twenty-five to one-hundred pounds was routine for the job. ECF 20-3, PgID 254. The Human Resources Director also identified several tasks that required lifting more than twenty-five pounds that Plaintiff was expected to carry out while on the job. ECF 20-9, PgID 365–66. Although the testimony appears inconsistent on what specific weight limit was essential for Plaintiff to lift, "[n]one of this is to say that whatever the employer says is essential necessarily becomes essential." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 765 (6th Cir. 2015) (en banc).

The City also attached a Sign Technician job description to the summary judgment motion. ECF 20-2. But the job description was revised *after* Plaintiff was

fired. *Id.* at 230. And the Court cannot rely on the description because it was never in effect during Plaintiff's employment.

The Court will instead look at the job description in effect during Plaintiff's employment. ECF 22-17, PgID 806–07. The description details that the job demands "lift[ing] heavy objects" and "perform[ing] strenuous physical labor." *Id.* at 807. The job also requires an employee to "lift[], push[], pull[], or carr[y] objects." *Id.* And the job "requires good manual dexterity (hand, hand with arm, two hands) and multilimb coordination." *Id.* A listed essential task is to "lift and carry at least 50 pounds on a routine basis to complete [daily operations in the sign shop, respond to sign emergencies, and to keep physical inventory of materials for signs]." *Id.* at 806. At bottom, the description notes that lifting and carrying fifty pounds was an essential task of Plaintiff's job. Yet based on the job description, it is unclear whether lifting and carrying fifty pounds unassisted or with only a right hand was essential. *See id.* at 806–07.

Next, the testimony about the time Plaintiff spent lifting and carrying fifty pounds differs. Plaintiff, for instance, explained that when he was tasked with lifting heavy concrete that weighed more than fifty pounds, he could easily break it into smaller, more manageable weights. ECF 22-2, PgID 502–03. One supervisor disagreed with the statement but conceded that if a worker broke a bag into smaller weights, then he would not question the worker doing so. ECF 20-3, PgID 255–56.

Plaintiff also noted that carrying vinyl that weighed more than his restrictions would not occur often, especially after he was fired because the City used a new

machine that required less loading. ECF 22-2, PgID 497. Federal "[c]ourts have previously found that, *even if* a function is rarely required, the *consequences* of failing to require the employee to perform that function may illustrate that it is essential." *Swann v. Washtenaw Cnty.*, 221 F. Supp. 3d 936, 942 (E.D. Mich. 2016) (emphasis added). And here the consequences were Plaintiff having to request assistance from a coworker or use an aid. ECF 22-2, PgID 497, 502. But the extent of the consequences is disputed. On the one hand, a supervisor explained that Plaintiff was routinely denied assistance or assistance was often delayed. ECF 20-3, PgID 239–40. On the other hand, Plaintiff testified that he would plan and "prepare [his] day" so that the inconvenience to other coworkers was minimal. ECF 22-2, PgID 497. Not to mention, the current Sign Technician receives help installing signs and lifting heavy loads. ECF 20-3, PgID 250; ECF 20-13, PgID 419. In fact, when Plaintiff was installing signposts during his surgeries, another worker operated the fifty-pound jackhammer. ECF 20-3, PgID 501. And for other heavy loads that a worker cannot lift alone, a supervisor recalled that all workers are allowed to use equipment to lift those loads. ECF 20-4, PgID 295. All told, a genuine dispute exists about the consequences that would arise from failing to carry over fifty pounds.

In contrast, other cases have required more severe consequences before finding that lifting was essential. For example, a vocational specialist who needed to provide "physical assistance in the event of injury, accident, or outburst" would "risk[] consumers' health and safety" if she could not physically assist patients. *Swann*, 221 F Supp. 3d at 943. Consider too that lifting was essential for a bus driver of

15

handicapped students because if an emergency arose, the driver may have been called upon to lift students riding the bus to safety. *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 849–50 (6th Cir. 1998). And in a case discussed during the motion hearing, when an employer tried to accommodate an employee "by having other employees lift items for her, it created bottlenecks and *safety concerns* for surgery patients and other employees." *O'Dowd v. W.A. Foote Mem'l Hosp.*, No. 2:21-cv-10806, 2022 WL 983154, at \*5 (E.D. Mich. Mar. 30, 2022) (Murphy, J.) (emphasis added). But unlike those cases, no one here voiced a safety concern if Plaintiff could not lift more than fifty pounds while working. In brief, Plaintiff has shown a genuine issue about whether lifting fifty pounds or more with his right arm was essential to his job.

### 2.   *Without an accommodation*

Even if Plaintiff's essential tasks included lifting more than fifty pounds, a genuine dispute exists about whether he could perform the task without an accommodation. Plaintiff, for instance, is left-handed and his left arm has no weight restriction. ECF 22-2, PgID 496; *see also* ECF 20-10, PgID 370. He can lift fifty pounds with his left arm. ECF 20-8, PgID 354–55. And Plaintiff's doctor wrote that Plaintiff "could do more using both arms." ECF 22-7, PgID 672. Thus, if the Court were to look only at whether Plaintiff could perform the essential task of lifting fifty pounds—as the City has requested—a factual question exists about whether he could do so. *See* ECF 23, PgID 822 (City reply brief arguing that "lifting at least 50 pounds is an essential function of the sign technician position").

### 3.    *Proposed reasonable accommodations*

Still, assuming Plaintiff could not lift fifty pounds and that lifting fifty pounds were essential, Plaintiff has shown a genuine issue about whether he had a right to a reasonable accommodation. An employer must "mak[e] reasonable accommodations" to an employee under the ADA. 42 U.S.C. § 12112(b)(5)(A). And the same direct evidence framework set forth above applies to failure to accommodate claims. *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1228 (6th Cir. 2022) (citations omitted). An employee requiring an accommodation must identify one and show that it is reasonable and will allow him to perform his essential job functions. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). To that end, an employee need not even "use magic words such as 'accommodation' and 'disability'" to request an accommodation. *Fisher*, 951 F.3d at 419. An employee merely needs to request an accommodation, in writing or vocally. *King v. Steward Trumbull Mem. Hosp.*, 30 F.4th 551, 564 (6th Cir. 2022) (citation omitted).

As the City put it, "Plaintiff did not request a specific accommodation." ECF 20, PgID 218. But Plaintiff did ask the Human Resources Director for an accommodation under the ADA. ECF 20-10, PgID 371. Plaintiff pointed out that he would only need assistance with the jackhammer. *Id.* at 372. And Plaintiff told the Human Resources Director that the City was buying a new jackhammer that would make it easier for him to lift without coworker assistance. *Id.* at 372–73. Beyond that, Plaintiff pointed out that another coworker could lift the jackhammer. *Id.* Plaintiff also explained that he could lift certain items one-handed. *Id.* at 375. Because

17

Plaintiff sought specific accommodations for his lifting restriction, he has met his "initial burden of requesting an accommodation." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir. 1998).

The City also argued that any request for coworker assistance was unreasonable. ECF 20, PgID 219. It is true that employers need not "assign existing employees or hire new employees to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his disability." *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir. 1999); *see also Swann*, 221 F. Supp. 3d at 943. But the City's reliance on *Bratten* and *Swann* is misplaced. ECF 20, PgID 217–18.

In *Bratten*, a plaintiff sought an accommodation that "would have required other employees to perform as much as *twenty percent* of the plaintiff's lifting duties." *Keith v. Cnty. of Oakland*, 703 F.3d 918, 928 (6th Cir. 2013) (emphasis added) (citing *Bratten*, 185 F.3d at 632–33). The Sixth Circuit held the request unreasonable. *Bratten*, 185 F.3d at 632–33. And the Sixth Circuit has not applied *Bratten* as a bright-line rule that any request to have coworkers perform certain duties is unreasonable.[4] Instead, *Bratten* applies when "the proposed shift in responsibilities would . . . reallocat[e]" close to twenty percent of duties to coworkers. *Keith*, 703 F.3d at 928.

---

[4] At the motion hearing, Defendant's counsel agreed *Bratten* did not establish a bright-line rule.

Here, a jury could find Plaintiff's proposed reallocation was objectively reasonable. Installing signposts is a two-person job. ECF 20-13, PgID 418; ECF 22-2, PgID 498, 500. Because another worker would need to help Plaintiff either by holding a signpost or the jackhammer, reallocating the jackhammer responsibilities to the other worker does not change how many daily tasks the other worker must do. And if Plaintiff were to need occasional lifting assistance in the sign shop, a genuine dispute exists about how much reallocation would occur. *See* ECF 20-3, PgID 239–40; ECF 22-2, PgID 502. In the end, a jury could find that the proposed reallocation is objectively reasonable.

Because there is a genuine dispute about whether Plaintiff's proposed accommodations were reasonable, the Court will deny summary judgment on the discrimination claim. The City did argue that Plaintiff's proposed accommodations, although reasonable, were an undue hardship. *See Kleiber*, 485 F.3d at 869; ECF 20, PgID 217–20. After all, the current Sign Technician receives help installing signs and lifting heavy loads. ECF 20-3, PgID 250; ECF 20-13, PgID 419.

II.    <u>Failure to Accommodate Claim</u>

Because Plaintiff has shown a genuine issue about whether the City failed to accommodate his disability, he may also pursue a claim for failure to engage in the interactive process. *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) (citing *Rorrer*, 743 F.3d at 1041). "Once an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Hostettler*, 895 F.3d at 857. The process is an "individualized inquiry," *id.* (quotation omitted), that aims "to

'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations,'" *Kleiber*, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o)(3)). To that end, both parties must participate in good faith. *Id.* An employer does not act in good faith if it "determine[s] what accommodation it [is] willing to offer before ever speaking with" the employee. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018).

Plenty of evidence shows that the City did not participate in the interactive process with Plaintiff in good faith. For instance, the Human Resources Director refused to consider permanent accommodations for Plaintiff's job. ECF 20-10, PgID 370; ECF 22-2, PgID 506, 509. And a supervisor even foreclosed any chance that Plaintiff could work with a restriction. ECF 20-3, PgID 247, 249. The Director also admitted she and "everybody got together and decided that they just couldn't keep" accommodating Plaintiff. *Id.* at 372. In short, more than enough evidence shows that the City refused to even consider a permanent accommodation without talking to Plaintiff. *See Mosby-Meachem*, 883 F.3d at 605–06.

III.   <u>Retaliation Claim</u>

The ADA retaliation claim relies on Plaintiff's request for a reasonable accommodation and his EEOC charge filing. ECF 1, PgID 8–9. Plaintiff offered no argument to support a retaliation claim based on the EEOC filing. *See* ECF 22, PgID 482–83. The Court will therefore consider the position abandoned. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for

summary judgment.") (collecting cases). As a result, the only remaining issue is whether the City fired Plaintiff for requesting an accommodation.[5] The parties dispute only whether there was a causal connection between his accommodation request and his firing. ECF 20, PgID 221–22; ECF 22, PgID 483.

Plaintiff explained that his retaliation claim turns on direct evidence. ECF 22, PgID 483 (explaining that the Human Resources Director's statements of "no permanent accommodations" "is direct evidence of causation."). "Direct evidence is such that, if true, requires the conclusion that unlawful retaliation was a motivating factor without any inferences or presumptions." *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 693 (E.D. Ky. 2014) (citation omitted*); see also Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 79 (6th Cir. 2020) ("[D]irect evidence does not require a factfinder to draw any inferences to conclude that the employer wrongfully [retaliated].") (citation omitted).[6]

Plaintiff has shown no direct evidence of retaliation. Plaintiff's firing was not "prompted by [him] having requested an accommodation for [his] disability." *Veith v. Tyson Fresh Meat, Inc.*, No. 3:19-cv-01065, 2022 WL 891836, at *13 (M.D. Tenn. Mar.

---

[5] At the motion hearing, Plaintiff appeared to assert a new argument that when the City changed the job description after Plaintiff's EEOC charge, the City was engaged in hostility. Besides the minimal analysis, the new argument fails to show that changing the job description was an adverse employment action. *See Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) ("[A] 'mere inconvenience or an alteration of job responsibilities' is not sufficient to constitute an adverse employment action.") (quotation omitted).

[6] In contrast, for indirect evidence claims, the "Court uses the *McDonnell Douglas* burden-shifting approach." *Rorrer*, 743 F.3d at 1046 (citation omitted). Neither party analyzed the retaliation claim under the *McDonnell Douglas* framework. ECF 20, PgID 220–22; ECF 22, PgID 482–83.

21

25, 2022). Rather, the evidence shows that Plaintiff was fired only because his employer refused to accommodate his weight restriction—not because he merely *asked* for an accommodation. Although statements from a supervisor and the Human Resources Director show an obtuse view of the City's duty to accommodate a disabled employee, the statements do not "require[] the conclusion that unlawful retaliation was a motivating factor." *Banks*, 15 F. Supp. 3d at 693; *see* ECF 20-3, PgID 247, 249 (supervisor); ECF 20-10, PgID 369–71 (Human Resources Director). The Court will thus grant summary judgment on the ADA and PWDCRA retaliation claims.

## CONCLUSION

Because only the ADA and PWDCRA discrimination, failure to accommodate, and interactive process claims remain, a factfinder must resolve the case. The Court will therefore refer the parties to mediation with Mr. John Birmingham. *See* ECF 19. The mediation must occur no later than June 24, 2022. The Court will set a final pretrial conference for July 20, 2022 and a jury trial to begin on August 2, 2022.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the summary judgment motion [20] is **DENIED IN PART and GRANTED IN PART**.

**IT IS FURTHER ORDERED** that the Court **REFERS** the case to Mr. John Birmingham for mediation and settlement discussions and **ORDERS** the parties to proceed in compliance with Local Rule 16.4. The mediation and settlement discussions must occur **no later than June 24, 2022**. The parties must contact Mr.

Birmingham and provide him with a copy of this order as soon as practicable and **NOTIFY** the Court of the date of the mediation session once it is scheduled.

**IT IS FURTHER ORDERED** that Mr. Birmingham must **NOTIFY** the Court within seven days of completion of mediation, stating only the "date of completion, who participated, whether settlement was reached, and whether further [alternative dispute resolution] proceedings are contemplated." E.D. Mich. L.R. 16.4(e)(6). If a settlement is reached, the parties must **NOTIFY** the Court right after completion of mediation and **SUBMIT** a proposed order of dismissal within twenty-one days. *Id.* at 16.4(e)(7). If a settlement is not reached, the parties must **NOTIFY** the Court within seven days of the completion of mediation.

**IT IS FURTHER ORDERED** that the final pretrial conference is **SET** for **July 20, 2022 at 3:00 p.m.** and the jury trial is **SET** for **August 2, 2022 at 9:00 a.m.**

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 11, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 11, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager